*In the District Court of the United States*
*For The District of South Carolina*
BEAUFORT DIVISION

| | | |
|---|---|---|
| **CHARLES GRANT**, | ) | |
| | ) | Civil Action No. 9:05-1974-GCK |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **JO ANNE B. BARNHART**, | ) | **ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.  INTRODUCTION

This case is before the Court upon consent of the parties hereto, pursuant to Local Civil Rule 83.VII.02(A), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(c).  Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g).

The plaintiff, Charles Grant (the "Plaintiff" or "Claimant"), brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act, respectively.[1]

---

[1]    The Social Security Act comprises two disability benefits programs.  The Social Security Disability Insurance Program, established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides Disability Insurance Benefits ("DIB") to disabled persons who have contributed to the program while employed.  The Supplemental Security Income Program ("SSI"), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons.  The statutory

## II.  BACKGROUND TO CLAIM

Plaintiff was born on August 18, 1954, and has a high school education.  (Tr. 579, 581)

He has worked in the vocationally relevant past as dishwasher, printing press operator, and

temporary laborer performing jobs such as cleaning up construction sites.  (Tr. 72, 109, 581-85,

604-05)  Plaintiff has not engaged in substantial gainful activity since his alleged onset date of

disability, on October 1, 2000.  (Tr. 61, 555)  Plaintiff alleges disability due to diabetes mellitus,

high blood pressure (hypertension), stomach ulcers, fatigue, blurry vision, and surgery on his

testicles.  (Tr. 16)

## III.  MEDICAL EVIDENCE AND TESTIMONY FROM THE HEARING

### A.  Medical Evidence

On April 9, 2002, Plaintiff was admitted to the Emergency Department at Lexington

Medical Center ("Lexington").  The discharge summary indicated Plaintiff was treated for newly

diagnosed diabetes mellitus manifested by diabetic ketoacidosis, hypertension, acute pancreatitis,

and elevated cardiac enzymes.  (Tr. 135)  On the same day, Dr. Diamond noted Plaintiff's

excessive secretion of urine, excessive thirst, and abdominal pain and nausea.  (Tr. p.137)  The

medical records indicate that Plaintiff had a long history of tobacco use, alcohol abuse (two to

three quarts of alcohol every two days), intermittent rectal bleeding, and peptic ulcer disease.

(Tr. 136-37)  During his hospitalization, Plaintiff received insulin, diabetic supplies for checking

his blood sugar, medication for indigestion, and antihypertensive medication.  An EKG and

---

definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R.
pt. 404 (DIB); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here,
substantively identical.  See Bowen v. City of New York, 476 U.S. 467, 469-470 (1986).

echocardiogram were normal.  On discharge, his blood pressure was 140/90, and he was medically stable.  (Tr. 136).

On May 14, 2002, Plaintiff was again admitted to Lexington's Emergency Department for complaints of elevated blood sugars.  He was diagnosed with hyperglycemia (elevated blood sugar) and treated with insulin.  (Tr. 167-170)  Plaintiff stated he had not been able to have his medication filled and that he had not been taking insulin.  He denied having any headache, change in vision, or pain.  (Tr. 167)  He refused to have his blood pressure checked.  His physical examination was unremarkable and he had full 5/5 motor strength in all muscle groups and was well hydrated and nontoxic.  There was no evidence of hypertensive urgency or emergency.  The attending physician indicated Plaintiff needed to be placed back on his medications.  (Tr. 168)

On May 22, 2002, Plaintiff presented to nurse practitioner Theresa Prince of Medical Center Internists for a follow-up related to his emergency room visit.  Plaintiff stated that he had not taken any insulin for a month and a half and that he had not seen a diabetic  teacher, and was not following a diabetic diet.  He denied any chest pain or shortness of breath, but described some acid reflux symptoms.  He reported smoking five to 10 cigarettes per day for 20 years and drinking alcohol occasionally.  He said he was not taking any medications on a regular basis. (Tr. 177)  On examination, Plaintiff's blood pressure was 144/94, and his blood glucose level was 421.  Ms. Prince assessed Plaintiff with uncontrolled diabetes due to noncompliance with medication, hypertension, and a history of peptic ulcer disease with reflux.  She instructed Plaintiff with respect to a diabetic diet and the need to control his blood pressure, referred him to

a social worker, dietician, and free clinic, and noted that he currently did "not wish to have that information[.]"  (Tr. 178).

On July 18, 2002, Plaintiff was evaluated for disability by Dr. Einar Anderson of Carolina Occupational Health Care.  (Tr. 171-73)  Plaintiff complained of blurred vision, frequent sweating, and frequent urination.  Plaintiff was also noted to be anxious and tremulous. The examination was otherwise unremarkable.  (Tr. 172-73)  Plaintiff had full range of motion in all joints, and grossly normal muscle strength and grip strength, with no neurological deficits. On mental status examination, Plaintiff knew the date and reason for being there and also knew the current and previous Presidents.  He was able to read single words and the title on a magazine cover.  (Tr. 173)  Dr. Anderson opined that Plaintiff was suffering from diabetes mellitus and hypertension, both with poor control, and pancreatitis.  (Tr. 171-173)  Dr. Anderson recommended Plaintiff follow up at the free clinic for his diabetes and hypertension.  (Tr. 173)

On July 24, 2002, a State Agency physician reviewed Plaintiff's records and assessed his physical residual functional capacity ("RFC").  (Tr. 240-49)  The physician found that he could perform the exertional requirements of medium work (Tr. 243) and that he needed to avoid concentrated exposure to extreme temperatures.  (Tr. 246)

Plaintiff returned to Medical Center Internists on July 30, 2002, and saw David Ha, M.D. (Tr. 175-76)  He stated that his blood sugar levels ranged from 200 to 300 and that he had no way to get medication.  Plaintiff denied chest pain, shortness of breath, nausea, vomiting, diarrhea, or other problems, but indicated he still drank one to two beers per day.  Plaintiff's blood pressure was 154/98.  Dr. Ha assessed uncontrolled hypertension and diabetes, hyperlipidemia, history of reflux disease and peptic ulcer disease that were currently stable, and

a history of alcohol abuse.  (Tr. 175)  He provided Plaintiff with medication and advised him to follow his diet.  (Tr. 176)

Plaintiff returned to Dr. Ha on October 2, 2002, and stated he had not taken his insulin that day.  His blood glucose level was 305, and Dr. Ha noted that Plaintiff was not compliant with diet or medication.  Plaintiff denied physical problems other than frequent urination.  Plaintiff's physical examination was unremarkable.  (Tr. 268)  Plaintiff's blood pressure was 146/90.  Dr. Ha advised Plaintiff to take his medications, follow his diet, and keep track of his blood sugar levels.  (Tr. 268-269)

On November 9, 2002, Plaintiff presented to Lexington's Emergency Department with swelling and drainage in his scrotum.  Plaintiff also reported blurry vision and headaches.  His blood pressure was 105/75, and he reported blood sugar levels of around 375 despite his use of insulin (Tr. 190).  He was diagnosed with Fournier's gangrene and transferred to Palmetto Richland Memorial Hospital ("Richland") for emergency surgery on his scrotum and perineal area.  (Tr. 190, 139-98, 274-306)  He was discharged on November 20, 2002, with instructions to avoid walking, sitting, and heavy lifting.  (Tr. 292).  Several weeks later, on December 9, 2002, Allan Walls, M.D. of Richland wrote a note in which he opined that Plaintiff "remain[ed] disabled through the present with further disabling process at [that] time"[.]  (Tr. 199)

On February 12, 2003, Plaintiff again was seen by Dr. Ha of Medical Center Internists and reported elevated blood sugars, but no chest pain, shortness of breath, or other problems.  His physical examination was unremarkable and his blood pressure was 130/78.  Dr. Ha assessed Type 1 diabetes mellitus, "uncontrolled blood sugar" hypertension with "good control of blood

pressure" and a chronic infected ulcer of the scrotum.  He directed Plaintiff to return in two to four weeks.  (Tr. 263).

On February 21, 2003, Plaintiff was admitted to Richland due to complaints of sharp abdominal pain, nausea, excessive thirst, frequent urination, and a scrotal lesion.  (Tr. 201-20) Plaintiff stated he smoked two packs of cigarettes per day and did not drink alcohol.  (Tr. 202) A urinalysis showed a glucose level over 1,000.  (Tr. 208)  Attending physician Charles S. Bryan, M.D., treated Plaintiff for diabetic ketoacidosis, a candidal infection of the groin, gastro-intestinal reflux disease ("GERD"), and hypertension.  (Tr. 203)  Three days later, he was discharged on medication and directed to follow up with Dr. Ha.  (Tr. 204)

On March 17, 2003, Plaintiff presented to the Richland ambulatory clinic with complaints of ongoing drainage related to his scrotal surgery.  (Tr. 307).  The treatment note indicated he had a small wound that was "healing well".  (Tr. 307).

In April and May of 2003, Plaintiff presented to the Columbia Free Medical Clinic on four occasions for diabetic medication and follow-up care. (Tr. 221-23)

On May 14, 2003, Plaintiff presented to gastroenterologist Benjamin D. Massey, M.D., for a consultation.  Plaintiff described lower substernal epigastric pain extending to the umbilicus lasting two or three days at a time.  Plaintiff said he drank one or two beers a couple of times per week and smoked a pack of cigarettes every three days.  (Tr. 530).  Dr. Massey assessed recurrent epigastric pain, most likely caused by chronic pancreatitis, and ordered an upper GI endoscopy.  (Tr. 531).

On July 10, 2003, Plaintiff presented to Providence Hospital for evaluation of gastrointestinal problems, and underwent an esophagogastroduodenoscopy ("EGD") performed

by Dr. Massey, who found evidence of GERD, a hiatal hernia, mild distal esophagitis, prepyloric antral gastritis, and potential gastroparesis.  Biopsies were taken, and Plaintiff's samples indicated chronic inactive gastritis, moderate.  He was treated for GERD and prepyloric antral gastritis with nodularity.  (Tr. 308-311)

On August 28, 2003, Dr. Massey noted that Plaintiff had a hiatal hernia, mild esophatitis, and gastritis with possible gastroparesis.  (Tr. 528)  He scheduled Plaintiff for a colonoscopy. (Tr. 528)

Also on August 28, 2003, Plaintiff presented to Dean A. Floyd, M.D., for a consultative evaluation in connection with his application for benefits.  (Tr. 224-227)  Dr. Floyd noted that Plaintiff reported that his diabetes had never been controlled and he had frequent urination (every 15-20 minutes) and had numbness in his feet for the previous five or six months.  Plaintiff complained of blurry vision for the past year; he had never seen an optometrist of ophthalmologist.  Plaintiff also reported numbness in the groin, high blood pressure that was controlled since April 2002, shortness of breath, and low abdominal pain since his April, 2002 hospital admission.  He indicated that Nexium helped relieve his stomach discomfort and pain, but that he had not had any medication for some time.  He reported he smoked one pack of cigarettes per week and drank two beers per week.  Visual acuity testing revealed 20/100 vision bilaterally without correction.  His blood pressure was 180/90.  There were no gross neurological deficits.  Plaintiff was fully oriented, but was apprehensive and sweated profusely.  Dr. Floyd assessed diabetes, uncontrolled hypertension, poor vision, status post Fournier's gangrene and surgery, chronic abdominal pain of uncertain etiology, morbid obesity (Plaintiff is 5' 6 3/4" tall and weighted 231 pounds), and dental disease.  (Tr. 224-227)

On September 10, 2003, State Agency physician H. Weston, M.D., reviewed Plaintiff's records and assessed his physical residual functional capacity. Dr. Weston found Plaintiff did not have any exertional, postural, manipulative, communicative, or environmental limitations, but that he had "limited" visual acuity with uncorrected 20/100 vision. (Tr. 230-37)

On October 7, 2003, Plaintiff was admitted to Providence Hospital for four days for a colonoscopy and diabetic management. (Tr. 312-457) The colonoscopy showed internal hemorrhoids but was otherwise normal, as was a CT scan of the abdomen and pelvis. Plaintiff was directed to follow up at the free clinic. His diagnoses on discharge were anorectal bleed due to hemorrhoids and GERD. Plaintiff stated that he did not want treatment for the GERD. (Tr. 312).

On March 25, 2004, the Plaintiff was seen in the Emergency Department at Richland and subsequently admitted for four days. Plaintiff complained of elevated blood sugar despite taking his medications, and abdominal pain. A urinalysis showed a glucose level over 1,000. (Tr. 466) Dr. Privette opined that Plaintiff was suffering from early diabetic ketoacidosis, abdominal pain and ileus, and hyperglycemia, and referred Plaintiff to the internal medicine service. (Tr. 462-464) Due to Plaintiff's multiple admissions for diabetic ketoacidosis and abdominal pain, a CT scan was ordered, which revealed acute pancreatitis. (Tr 466) Plaintiff's abdominal pain resolved, and, following treatment with insulin and fluids, he was discharged with instructions to engage in "activity as tolerated [and] return to work or school as soon as condition allows"[.] (Tr. 466). He was ordered not to drink alcohol. (Tr. 466)

On June 23, 2004, Plaintiff was again hospitalized at Richland with abnormally high blood glucose levels and large ketones in his urine. Dr. M. Wade opined that Plaintiff was potentially suffering from diabetic ketoacidosis, and Plaintiff was admitted to the internal

medicine service at the University Specialty Clinic.  Upon admission, Dr. Karen Bernard diagnosed Plaintiff with hyperglycemia secondary to diabetes mellitus, and treated Plaintiff with IV fluid replacement and subcutaneous insulin.  Plaintiff was provided instructions on diet and medication.  (Tr. 533-530)

On July 20, 2004 Plaintiff underwent a CT scan due to abdominal pain.  The scan revealed pancreatic enlargement with mild peripancreatic edema consistent with probable pancreatitis.  (Tr. 550-551)

On October 5, 2004, Plaintiff presented to ophthalmologist W. L. Boyd, M.D., for an evaluation of his vision.[2]  Plaintiff's distance and reading vision without correction ranged from 20/30 to 20/40.  He had useful binocular vision in all directions, and it was noted that his vision was stable and prognosis was good. Dr. Boyd indicated that Plaintiff did not need to avoid any activity or working conditions after his vision was corrected, but did not prescribe glasses at the time since Plaintiff's blood sugar was elevated.  (Tr. 250-51)

On October 19, 2004, Plaintiff presented to the Richland emergency room with complaints of elevated blood sugar, thirst, frequent urination, and worsening vision.  He was treated for hyperglycemia, dehydration, and a urinary tract infection.  (Tr. 540)

## IV.  ADMINISTRATIVE PROCEEDINGS

The Plaintiff filed an application for SSI benefits and for DIB on April 17, 2002.  (Tr. 61-63; 555-557)  Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration (Tr. 37-56; 558-566) and a request for hearing was timely filed.

---

[2]    The ALJ had ordered that Plaintiff undergo a visual examination prior to the hearing, after the ALJ noted that Dr. Floyd found the Plaintiff's vision to be 20/100 upon examination in 2003.  (Tr. 616-617)

On January 5, 2005, a hearing was held in Columbia, South Carolina before the administrative law judge, Ben T. DeBerry (the "ALJ"). (Tr. 570-625) Plaintiff was represented by his attorney, Brett A. Owens. At the time of the hearing, Plaintiff was 50 years old. The ALJ heard testimony from the Plaintiff and from a vocational expert, Dr. Carey A. Washington (the "VE")

At the hearing, Plaintiff testified that he had worked at a number of temporary jobs, and had quit his last job in October 2000 as a dishwasher because he "was the only one doing all the work." (Tr. 584) He last worked in 2000.[3] (Tr. 581) His other previous jobs involved work as a temporary laborer, and primarily involved cleanup at construction sites. (Tr. 585) Plaintiff testified that he lived alone. (Tr. 579) He said his symptoms included blurred vision, fatigue, feeling sick, and having problems with concentration and memory. (Tr. 580, 591-92, 595)

Plaintiff testified that he had stopped driving in 2002 due to problems with diabetes and blurred vision. (Tr. 580) He said that his blood sugar became too high two to three days per week, which produced a lack of coordination, vomiting, and vision problems. (592-593) He

---

[3]  As the Commissioner concedes in her Brief, Plaintiff's employment as a "coater operator" was performed more than 15 years ago and was, therefore, not past relevant work for purposes of the ALJ's decision. *See* 20 C.F.R. §§ 404.1505, 404.1508. Similarly, and as Plaintiff's testimony indicates (Tr. 581-588), it is unclear whether Plaintiff's past work as a temporary laborer was performed at the substantial gainful activity level. The Commissioner also acknowledges that Plaintiff's past job as a printing machine operator required frequent near visual acuity, which exceeded his residual functional capacity. However, the remaining job of dishwasher constituted past relevant work and does not exceed his residual functional capacity. Therefore, since Plaintiff could still perform at least one of the jobs cited by the ALJ, the ALJ's determination that he was not disabled is supported by substantial evidence on the record as a whole. *See Weiler v. Apfel*, 179 F.3d 1107, 1110 (8th Cir. 1999) (claimant capable of performing only one job cited was found not disabled). Furthermore, the court finds that the testimony by the VE at the hearing indicates that the jobs listed by the VE were examples of various jobs Plaintiff could hold; the VE explained that the jobs described at the hearing were "just representative of the types of sedentary and light work [regarding] the DOT codes in the estimated numbers in the state of South Carolina and on a national level." (Tr. 618-619) (Emphasis supplied by the court"). Thus, the list of jobs was not exhaustive, but illustrative. *See, e.g., Ketcher v. Apfel*, 68 F.Supp.2d 629, 653 (D. Md. 1999) (upholding the ALJ's reliance upon the VE's testimony, who set forth several sedentary jobs that the claimant could perform, when the VE specifically testified that his list of examples were not exhaustive, and that the claimant could perform other sedentary jobs.).

described his daily activities as heating food in the microwave, taking 15 to 20-minute walks, lying down, and staying in the house.  (Tr. 592)  He sometimes washed dishes, but the majority of the housework and cooking is done by his sisters.  (Tr. 594-595)  He can lift between five and seven pounds.  (Tr. 595)  He was able to bathe himself, and went shopping for groceries once a month[4] and visited with neighbors, and family members who live next door.  (Tr. 594, 597-98) He stated he had difficulty sleeping at night, and he generally has to lie down for four or five times during the day and takes at least two or three naps a day, which reduce his fatigue.  (Tr. 593, 595-596)  His difficulties with sleeping cause concentration problems every day.  (Tr. 597) He has smoked a pack of cigarettes every three to four days for 20 to 25 years.  (Tr. 596)  He wore prescription eye glasses, and said he could see words printed on a page, but was unsure whether he could read the words at times.  (Tr. 617)

The ALJ asked the VE to consider a hypothetical individual of Plaintiff's vocational profile with the limitations assessed by Dr. Weston[5] with the additional qualification that the individual's vision, when corrected, was 20/30 for reading and 20/40 for distance.  (Tr. 616, 23, 25)  The VE testified that the individual could perform a number of jobs at the sedentary,[6] light,[7]

---

[4]    He testified he never shopped alone.  (Tr. 598).

[5]    As mentioned above, on September 10, 2003, State Agency physician Dr. Weston reviewed Plaintiff's records and assessed his physical residual functional capacity.  (Tr. 230-37)  Dr. Weston found Plaintiff did not have any exertional, postural, manipulative, communicative, or environmental limitations, but that he had limited visual acuity with uncorrected 20/100 vision.  (Tr. 233)

[6]    20 C.F.R. § 1567(a) defines sedentary work as follows:  Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

[7]    "Light work  involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with

or medium[8] levels of exertion in the state and federal economies.  (Tr. 618)  As representative jobs, the VE listed the unskilled sedentary jobs of garment folder/inspector or garment/manufacturing grader, and the unskilled light jobs of cleaner/housekeeper, laundry laborer, and marker.  (Tr. 618-619)  The VE further stated that the hypothetical individual would not be able to perform work if frequent naps and frequent restroom breaks were required.  (Tr. 621, 623-624)

The ALJ issued a decision on February 11, 2005, which found the Plaintiff not disabled because he had the residual functional capacity to perform his past relevant work, which was medium work, as well as perform work up to the heavy[9] level of exertion, restricted to preclude work requiring fine visual acutiy.  (Tr. 23-25)  In so deciding, the ALJ determined that Plaintiff's past work as a dishwasher did not exceed his RFC.  (Tr. 23)  According to the Dictionary of Occupational Titles, the job of "washer (any industry)" (DOT #599.687-030) is medium in exertion, unskilled, does not require any far visual acuity, and only requires occasional near visual acuity.  As discussed at length above, Plaintiff's diabetes, hypertension, and related

---

some pushing and pulling of arm or leg controls.  To be considered  capable of performing a full or wide range of  light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 1567 (b).

All references to the C.F.R. in this Order are to the 2005 edition.  All subsequent references are only to Part 404 of the regulations, which addresses claims under Title II of the Act.  All of the regulations cited herein have parallel citations in Part 416 of the regulations, which addresses claims under Title XVI of the Act.

[8]     "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary or light work."  20 C.F.R. §§ 404.1567(c), 416.967(c).

[9]     "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or 1 carrying of objects weighing up to 50 pounds.  If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work."  20 C.F.R. §§ 404.1567(d), 416.967(d).

symptoms did not produce functional limitations that would have precluded him from returning to his past work as a dishwasher.  In addition, Plaintiff's vision, as corrected, was measured at 20/30 to 20/40 bilaterally.  (Tr. 250)

On May 13, 2005, the Appeals Council denied Plaintiff's request for review (Tr. 7-10), thereby making the ALJ's decision the Commissioner's final decision for the purposes of judicial review.  *See* 20 C.F.R. §§ 404.981, 416.1481.  The Plaintiff has exhausted his administrative remedies.  The parties have briefed the case, and it is now ripe for judicial review under § 205(g) of the Act, 42 U.S.C. § 405(g).

## V.  THE COMMISSIONER'S FINDINGS

In making her determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

1.   The claimant met the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through December 31, 2003, but not thereafter.

2.   The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.   The claimant's diabetes mellitus, hypertension, gastroesophageal reflux disease, obesity, and diminished visual acuity are considered "severe" based on the requirements in the Regulations[.]  20 CFR §§ 404.1520(c) and 416.920(b).

4.   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.   The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.   The claimant has the residual functional capacity to perform a range of work up to the heavy level of exertion, restricted to preclude work requiring fine visual acuity.

7.   All of the claimant's past relevant work did not require the performance of work related activities precluded by his residual functional capacity (20 CFR §§ 404.1565 and 416.965).

8.   The claimant's medically determinable diabetes mellitus, hypertension, gastroesophageal reflux disease, obesity, and diminished visual acuity do not prevent the claimant from performing his past relevant work.

9.    The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision.  (20 CFR §§ 404.1520(f) and 416.920(f)).

## V.  SCOPE OF REVIEW

Under the Social Security Act, 42 U.S.C. § 405(g), this Court's scope of review of the Commissioner's "final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002); *see also Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Court's scope of review is specific and narrow.  It does not conduct a *de novo* review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence.  42 U.S.C. § 405(g); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).  "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict, and "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Shivey v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  "In reviewing for substantial evidence, [the Court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  It is the duty of the ALJ reviewing the case, and not the responsibility of this Court, to make findings of fact and resolve conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  If substantial evidence supports the Commissioner's decision that a claimant is not disabled, the decision must be affirmed.  *Blalock*, 483 F.2d at 775.

## VI.  THE APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability."  42 U.S.C. § 423(a).  Disability is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can expected to result in death or which has lasted or can be expected to last for at least 12 continuous months. . . [The] physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 423(d) (2005).

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions that are to be asked during the course of a disability determination.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137 (1987);  *Heckler v. Campbell*, 461 U.S. 458 (1983); *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).  The five questions are:

(1) Whether the claimant is engaged in substantial gainful activity as defined in Sections 404.1510, 404.1571 et seq., 416.971 *et seq*.  If such determination is affirmative, no disability will be found.  20 C.F.R. §§ 404.1520, 416.920.

(2) Whether the claimant's impairments meet the durational requirement (Section 404.1509), and are severe (Sections 404.1520(c), 416.920(c).  If they do not meet those requirements, no disability will be found.  20 C.F.R. §§ 404.1509, 404.1520(c), 416.920(c).

(3) Whether the claimant has an impairment which meets or medically equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1) (the "Listing of Impairments") 20 C.F.R. §§ 404.1520(d), 416.920(d). If one of the listings is met, disability will be found without consideration of age, education or work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

(4) Whether the claimant has an impairment which prevents past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e).

(5) Whether, in light of vocational factors such as age, education, work experience and RFC, the claimant is capable of other work in the national economy. The claimant is entitled to disability only if the answer is "no." 20 C.F.R. §§ 404.1520(f), 416.920(f).

An individual may be determined not disabled at any step if found to be: gainfully employed, not severely impaired, not impaired under the Listing of Impairments, or capable of returning to former work. In such a case, further inquiry is unnecessary. If, however, the claimant makes a showing at Step Four that return to past relevant work is not possible, the burden shifts to the Commissioner to come forward with evidence that the claimant can perform alternative work and that such work exists in the national economy. *English v. Shalala*, 10 F.3d 1080 (4th Cir. 1993); *Harper v. Bowen*, 854 F.2d 678 (4th Cir. 1988); *Coffman v. Bowen*, 829 F.2d 514 (4th Cir. 1987). The Commissioner may meet this burden by relying on the Medical-Vocational Guidelines (the "Grids") or by calling a vocational expert to testify. 20 C.F.R. § 404.1566. The Commissioner must prove both the claimant's capacity and the job's existence. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (*per curiam*), *citing Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) ("At step five, the agency has the burden of

providing evidence of a significant number of jobs in the national economy that a claimant could perform." (citations omitted)).

"Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." Johnson, 434 F.3d at 653, *quoting Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001), *and Craig v. Chater*, 76 F.3d 585, 589 (4th Cir.1996). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson*, 434 F.3d at 653, *qutoing Craig*, 76 F.3d at 589 (internal quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653, *quoting Craig*, 76 F.3d at 589. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Johnson*, 434 F.3d at 653, *quoting Craig*, 76 F.3d at 589 (internal quotation marks omitted). If substantial evidence supports the Commissioner's decision that a claimant is not disabled, the decision must be affirmed. *Blalock*, 483 F.2d at 775.

## VIII.  THE ALJ'S ANALYSIS

Consistent with the five step "sequential evaluation" for the adjudication of disability claims, the ALJ first found the Plaintiff had not engaged in substantial gainful activity since the onset of disability. (Tr. 24, Finding 2) At Steps Two and Three, the ALJ determined that Plaintiff's diabetes mellitus, hypertension, GERD, obesity, and diminished visual acuity were

"severe" impairments,[10] but that these medically determinable impairments did not meet or medically equal any of the criteria listed in Appendix 1 to Subpart P, Regulation No. 4. (Tr. 24-25, Findings 3-4) The ALJ also found that the Plaintiff's allegations regarding his limitations were not fully credible. (Tr. 25, Finding 5) Specifically, the ALJ determined that the Plaintiff had the residual functional capacity ("RFC") to perform a range of work up to the heavy level of exertion, restricted only to preclude work requiring fine visual acuity. (Tr. 25, Finding 6)

Proceeding to Step Four, the ALJ determined that Plaintiff's diabetes mellitus, hypertension, GERD, obesity, and diminished visual acuity did not prevent him from performing his past relevant work. (Tr. 25, Findings 7, 9)

It is well-settled that the Plaintiff bears the burden on the first four steps. At Step Five, however, the burden shifts to the commissioner to show "that there are jobs in the national economy that [the] claimant can perform." 20 C.F.R. § 416.920(f). At the hearing, the ALJ took testimony from the VE, and then concluded that the Plaintiff retained the RFC to perform a significant range of work up to the heavy level. The ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act. (Tr. 25, Finding 9)

## IX. PLAINTIFF'S OBJECTIONS

Plaintiff raises two objections in his Brief, which are listed below:

Objection I.    Did the Administrative Law Judge properly evaluate the effects of Plaintiff's mental and physical impairments, specifically diabetes mellitus, high blood pressure, chronic abdominal pain, weakness and fatigue, and mental confusion?

---

[10]    An impairment or combination of impairments is considered "severe" when it significantly limits a person's physical or mental ability to do basic work activities. Age, education, and work experience are not considered. 20 C.F.R. § 404.1520(c); Social Security Ruling ("SSR") 96-3p.

Objection II.    Did the Administrative Law Judge properly evaluate Plaintiff's subjective complaints of pain, nausea, confusion, frequent urination, and side effects of medication?

## IX.  DISCUSSION

Objection I.    Did the Administrative Law Judge properly evaluate the effects of Plaintiff's mental and physical impairments, specifically diabetes mellitus, high blood pressure, chronic abdominal pain, weakness and fatigue, and mental confusion?

By Brief, Plaintiff argues that the ALJ failed to assess the effects of the Plaintiff's impairments, and that the greater weight of the medical evidence indicates that Plaintiff is completely disabled.  In support of this argument, Plaintiff first points to his history of uncontrolled diabetes and hospitalizations beginning in 2002.  Plaintiff argues that he falls within Listing 9.08 because the Plaintiff has medically documented diabetes mellitus, with hospitalization for diabetic ketoacidosis on April 9, 2002, February 21, 2003, March 25, 2004, and June 23, 2004.  When considered together with Plaintiff's other frequent hospitalizations due to complications of diabetes mellitus, the Plaintiff's impairments medically equal the listed impairment.

This court disagrees.  In order to meet this Listing, the ketoacidosis must occur "at least on the average of once every two months."  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.08(B). In the present case, however, the evidence before the ALJ demonstrated that Plaintiff had ketoacidosis a total of four times, none of which were only two months apart.  In order to meet a Listing, a claimant must show his impairment or combination of impairments meets all of the specified medical criteria.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  Similarly, in order to medically equal a Listing, a claimant must present medical findings equal in severity to all the

criteria for the most similar listed impairment. *Id.* at 531. Plaintiff has not shown that his impairments, alone or in combination, were severe enough to meet or equal Listing 9.08.

Furthermore, with respect to Plaintiff's diabetes, the court notes that although the Plaintiff alleged disability commencing in October 2000 (Tr. 61, 555), there is no evidence that he sought or received any medical treatment until April 2000, when he was diagnosed with diabetes. (Tr. 135) It appears that Plaintiff did not stop working in October 2000 due to his impairments; as he told Dr. Anderson in July 2002, he quit because "[He] got stressed out." (Tr. 172) As Dr. Anderson noted, Plaintiff "states that he was the only person on the job doing the actual work and he became frustrated with his colleagues." (Tr. 172) Likewise, as Plaintiff testified at the administrative hearing, he quit his dishwashing job because he "was the only one doing all the work." (Tr. 584) The fact that there is no evidence of any medical treatment for approximately eighteen months after Plaintiff's alleged onset date, and the fact that he stopped working for reasons unrelated to his impairments both support the ALJ's determination that Plaintiff's impairments did not produce disabling functional limitations. *See Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (ALJ did not err by considering the inconsistency between claimant's level of treatment and her claims of disabling symptoms).

In addition, while Plaintiff was hospitalized for complications of uncontrolled diabetes on several occasions, there is significant evidence that he was noncompliant with medications and instructions from his physicians. In May 2002, he admitted that he had not taken any insulin for one and a half months, had not seen a diabetic teacher, was not following a diabetic diet, and was not taking any medication on a regular basis. (Tr. 177) When Ms. Prince referred him to a

social worker, dietician, and free clinic, Plaintiff indicated that he did not wish to receive that information.  (Tr. 178)  In July 2002, Plaintiff told Dr. Ha that he had no way to get medication (Tr. 175), but the same month he told Dr. Anderson that he had never gone to the free clinic. (Tr. 171)  In October 2002, Plaintiff reported to Dr. Ha that he had not taken his insulin that day, and Dr. Ha noted his noncompliance with diet or medication.  (Tr. 268)  It must be noted that Plaintiff presented to the emergency room the following month with blurred vision and headaches, but referred to his symptoms as "an insulin reaction" which, of course, suggests that he was taking insulin.  (Tr. 190)  In October 2003, Plaintiff declined to receive any treatment for his symptoms of GERD.  (Tr. 312)  Plaintiff's history of noncompliance with various treatments for his impairments supports the ALJ's ultimate determination that Plaintiff's impairments were not disabling.  *See Preston v. Heckler*, 769 F.2d 988, 990 n.1 (4th Cir. 1985) (noncompliance with effective measures provides a basis for denying benefits); 20 C.F.R. § 404.1530 (failure to follow prescribed treatment will result in a finding of no disability).

Next, Plaintiff's impairments, taken in combination, do not support his allegations of disability.  Indeed, objective findings upon on examination did not suggest any deficits that would have prevented Plaintiff from being able to perform a range of heavy work.  Plaintiff's EKG and echocardiogram were normal.  (Tr. 136)  Plaintiff retained full 5/5 motor strength in all muscle groups, and he had full range of motion in all joints, grossly intact grip strength, and no neurological deficits.  (Tr. 168, 173, 226)  There was no evidence of hypertensive emergency. (Tr. 168).  Plaintiff's GERD and peptic ulcer disease remained stable.  (Tr. 175)  Physical examinations throughout the record were unremarkable.  (Tr. 226, 263, 268, 533-34)  Also, in

August 2003, Plaintiff admitted that his hypertension was under control and that his stomach

problems responded to Nexium.  (Tr. 225)  The lack of objective findings and the fact that

Plaintiff's conditions were amenable to treatment provide further support for the ALJ's decision.

*See Craig v. Chater*, 76 F.3d 585, 591-96 (4ᵗʰ Cir. 1996) (medical evidence supported a

conclusion that claimant was not disabled); *Gross v. Heckler*, 785 F.2d at 1166 (a condition is

not disabling if it can be reasonably controlled by medicine or treatment).

Although Plaintiff also relies upon the opinion of Dr. Walls in support of his application

for disability, Dr. Walls' letter provides no traction for Plaintiff's argument.  Dr. Walls stated in

December 2002, one month after Plaintiff's surgery for Fournier's gangrene, that Plaintiff was

"disabled through the present with"further disabling process at this time."  (Tr. 199)  While it is

true that Plaintiff's medical records reflect that his surgical wound healed somewhat slowly, he

fully recovered from the gangrene and subsequent surgery.  By March 2003, it was noted that his

surgical wound was healing  well. (Tr. 307)  In August 2003, Dr. Floyd examined Plaintiff and

found only an old scar over the scrotum.  (Tr. 227)  There is no evidence to suggest that

Plaintiff's healed scrotum permanently impacted Plaintiff's ability to work.  Moreover, no other

physician concurred that he was disabled, and Dr. Walls never reassessed his ability to work.  In

fact, none of the physicians who treated or evaluated Plaintiff ever placed any ongoing

functional restrictions on him.  As recently as March 2004, after another episode of diabetic

ketoacidosis and pancreatitis, Plaintiff was instructed to return to work or school as soon as his

condition allowed.  (Tr. 466)  Even Dr. Boyd, the ophthalmologist who evaluated Plaintiff in

October 2004, noted that Plaintiff's vision would not cause him to avoid any types of activity or

working conditions. (Tr. 251) At the hearing, Plaintiff admitted that he was able to see words printed on paper, live alone, and wash dishes. (Tr. 579, 594, 617) The medical evidence related to Plaintiff's vision coupled with his own admissions, supports the ALJ's determination that he would not be precluded from performing his past work as a dishwasher.

The complete lack of ongoing medically necessary restrictions allowed the ALJ to infer that Plaintiff's impairments did not limit his ability to perform a range of heavy work and to discount Dr. Walls' opinion of disability, which was conclusory and inconsistent with subsequent evidence of record. *See Jolley v. Weinberger*, 537 F.2d 1179, 1181 (4th Cir. 1976) (inferences properly can be drawn from record evidence); *see also Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (controlling weight will be given to a treating physician's opinion concerning the severity of a claimant's impairment only if the opinion is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques).

Next, Plaintiff claims that he has a mental impairment which the ALJ failed to adequately evaluate. Plaintiff testified before the ALJ that he is able to sleep only about three hours a night, and that this affects his ability to concentrate and to remember things. (Tr. pp.596-597) However, Plaintiff's claim of a mental impairment is not supported by the objective medical evidence. Plaintiff never diagnosed with cognitive difficulties or other mental disorders. Although Plaintiff has complained of some memory and concentration problems, no physician ever indicated he had a diagnosable mental disability, or needed any work restrictions, or had to modify his activities due to these alleged problems. Furthermore, Plaintiff never sought

treatment from, and has never been treated by a mental health professional.  The transcript of the

hearing indicates Plaintiff answered questions lucidly.  Thus, there is no evidence (except

Plaintiff's own testimony) to suggest Plaintiff suffers from a mental impairment that would

prevent him from performing the work the ALJ determined he could perform.  The evidence

before the ALJ did not support a finding that Plaintiff had a mental impairment.  *See Craig*, 76

F.3d at 591-96 (medical evidence supported a conclusion that claimant was not disabled);

*Mickles*, 29 F.3d at 930 (ALJ did not err by considering the inconsistency between claimant's

level of treatment and her claims of disabling symptoms).

> Objection II.    Did the Administrative Law Judge properly evaluate Plaintiff's subjective
> complaints of pain, nausea, confusion, frequent urination, and side effects of
> medication?

Plaintiff also contends that the ALJ improperly evaluated his subjective complaints of

pain, nausea, confusion, frequent urination, and side effects of medication.  Again, this argument

is not supported by the evidence of record.  The ALJ's decision thoroughly discussed Plaintiff's

testimony in light of other evidence of record.  (Tr. 22-23).  The ALJ was not required to

uncritically accept Plaintiff's allegations that he was "disabled."  *See Craig*, 76 F.3d at 591.

Instead, after discussing the medical evidence and other evidence of record, the ALJ found

Plaintiff's subjective complaints were not fully credible, as he was entitled to do.  *See* SSR 96-7p

(one strong indication of the credibility of an individual's statements is their inconsistency with

other information in the case record).  The ALJ did not summarily dismiss Plaintiff's subjective

complaints but considered them in light of such inconsistencies as the frequent noncompliance

with medication, inconsistent statements, and daily activities.  (Tr. 23).  Ultimately, since the

credibility determination is supported by substantial evidence, this court will defer to it and not

substitute its judgment for that of the ALJ, the finder of fact.  See *Hays*, 907 F.2d at 1456.

Plaintiff bore the burden at Steps One through Four to show that his impairments and resultant

limitations would prevent him from being able to perform any work, and he did not meet that

burden in this case.  *See Blalock*, 483 F.2d at 775 (the claimant bears the burden of proving

disability to the satisfaction of the Commissioner and it is the claimant who bears the risk of

nonpersuasion).  The court finds that substantial evidence supported the ALJ's determination

that Plaintiff was not disabled.  *See Pass v. Chater*, 65 F.3d 1200, 1206-1207 (4th Cir. 1995)

(claimant was not disabled because he retained the residual functional capacity to perform his

past relevant work); see also 20 C.F.R. § 404.1562(b) (a claimant with the residual functional

capacity to perform past relevant work will be found not disabled).

THEREFORE, the decision of the Commissioner is affirmed

IT IS SO ORDERED.


S/George C. Kosko
United States Magistrate Judge

May 25, 2006

Charleston, South Carolina